# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:96–cr–50034-1 |
| v. | MEMORANDUM OPINION |
| RAY WALLACE METTETAL, *Defendant*. | JUDGE NORMAN K. MOON |

This case is presently before the Court upon Defendant's motion for expungement (docket no. 359). Because the Court lacks jurisdiction to rule on Mettetal's claim, his motion will be denied.

## I. BACKGROUND

Mettetal was convicted by a jury in July 1998 for possessing a toxin in violation of 18 U.S.C. § 175 and for possessing false identification documents in violation of 18 U.S.C. § 1028(a)(3). The Fourth Circuit overturned Mettetal's conviction because the evidence used at trial against him "should have been excluded as the fruit of [an] unlawful arrest." *United States v. Mettetal*, 213 F.3d 634, 2000 WL 530330, at *6 (4th Cir. May 3, 2000) (unpublished).

On remand, the district court again admitted the evidence against Mettetal, reasoning that it was admissible under the "good faith" exception. Mettetal was convicted in 2001, but the Fourth Circuit again overturned the conviction, finding that all evidence discovered as a result of Mettetal's unlawful arrest was inadmissible. *See United States v. Mettetal*, 48 Fed. Appx. 895, 897 (4th Cir. 2002).

The United States filed a motion to dismiss the indictment against Mettetal on December 2, 2002, and this Court granted the motion on December 10, 2002.

Mettetal asks the Court to expunge his criminal record "and should also order the FBI to expunge/correct its criminal records . . . ." Docket No. 359, at 2. Mettetal emphasizes that he has no other convictions and that it has been 20 years since he was first unlawfully arrested. Mettetal claims "he continues to be harassed by the local medical community and has been unable to obtain hospital privileges due to the existence of adverse information on his record." *Id.* He has also been denied the right to acquire a handgun license in Tennessee, because he claims his "FBI record makes no mention of the fact that the conviction was overturned and the charges subsequently dismissed." *Id.*

## II. JURISDICTION

As an initial matter, the Court must determine whether it has jurisdiction to decide Mettetal's claim. Where a party seeks to adjudicate in federal court, the party "must demonstrate the federal court's jurisdiction over the matter." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Otherwise, without jurisdiction, a court may not rule on the merits of the claim. *See Goldsmith v. Baltimore*, 845 F.2d 61, 63–64 (4th Cir. 1989) (citing *Johnson v. Town of Elizabethtown*, 800 F.2d 404, 407 n.2) (4th Cir. 1986)). In determining whether the Court has jurisdiction, it must bear in mind that federal courts "possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

Courts have the statutory power to expunge documents relating to a criminal charge in only narrow situations not applicable here. *See, e.g.*, 18 U.S.C. § 3607(c) (first offender under Controlled Substances Act). Accordingly, Congress has not directly provided federal district courts with jurisdiction to expunge records for equitable reasons, and "the absence of explicit jurisdictional authorization is notable in light of Congress's decision to provide for an

expungement remedy in other narrowly and specifically defined circumstances not applicable here." *United States v. Mitchell*, 683 F. Supp. 2d 427, 432 (E.D. Va. 2010). Moreover, "[t]here is no dispute that the power to expunge federal criminal convictions solely on equitable grounds is [not] explicitly authorized by the[] Constitution . . . ." *Id.* at 429.

Nevertheless, the Supreme Court has held that district courts may, in some circumstances, have ancillary jurisdiction over a claim, which grants jurisdiction to district courts over "some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen*, 511 U.S. at 378–79; *see also* 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure* § 3523.2, at 213 (3d ed. 2008) (ancillary jurisdiction exists where a district court "acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the full disposition of the matter, may hear collateral proceedings when necessary to allow it to vindicate its role as a tribunal.").

The Supreme Court in *Kokkonen* clarified the scope of ancillary jurisdiction, concluding that it exists in only two circumstances: (1) where necessary "to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent"; and (2) "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority and effectuate its decrees." *Kokkonen*, 511 U.S. at 379–80.

Before the Supreme Court decided *Kokkonen* in 1994, some courts found that they had the equitable power to expunge court records. *See, e.g.*, *United States v. Van Wagner*, 746 F. Supp. 619, 620–21 (E.D. Va. 1990). Since *Kokkonen*, neither the Supreme Court nor the Fourth Circuit have "directly addressed the jurisdiction to expunge a criminal record on equitable grounds." *United States v. Taylor*, Crim. No. 3:12mj230, 2014 WL 1713485, at *2 (E.D. Va. April 29, 2014) (unpublished).

Other Courts of Appeals have generally found that *Kokkonen* prevents courts from exercising jurisdiction over equitable expungement motions. *See, e.g.*, *United States v. Coloian*, 480 F.3d 47, 52 (1st Cir. 2007) ("Thus, *Kokkonen* forecloses any ancillary jurisdiction to order expungement based on . . . equitable reasons."); *United States v. Meyer*, 439 F.3d 855, 862 (8th Cir. 2006) ("[I]n light of *Kokkonen*, we conclude that ancillary jurisdiction does not extend to expungement of a criminal conviction where the petitioner asserts solely equitable grounds.").

Ancillary jurisdiction is inapposite here, because there is no factual interdependency between defendant's criminal case and his ancillary claim to expungement relief. Specifically, the facts giving rise to Defendant's criminal charges are unrelated to the circumstances he argues justifies his claim for expungement. *See Coloian*, 480 F.3d at 52; *see also Mitchell*, 683 F. Supp. 2d at 432. Moreover, his claim for expungement does not help this Court "manage its proceedings, vindicate its authority, [or] effectuate its decrees." *Kokkonen*, 511 U.S. at 380. On the contrary, entertaining expungement motions "would allow district courts across the country to develop possibly inconsistent equitable standards for ordering expungement," which could "lead[] to an impairment of the reliability and integrity of" federal court records. *Mitchell*, 683 F. Supp. 2d at 433.

In sum, neither the Constitution, nor statute, nor ancillary jurisdiction authorizes this Court to rule on Mettetal's expungement claim. Accordingly, his motion for expungement must be denied.

### III. CONCLUSION

Because the Court lacks jurisdiction to rule on Mettetal's claim, his motion for expungement will be denied (docket no. 359).

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and accompanying Order to the *pro se* Defendant and all counsel of record.

Entered this __22nd__ day of June, 2016.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE